IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


TIMOTHY P. O'MALLEY,
      Petitioner,

vs.                              Case No.: 1:05cv77/MMP/EMT

JAMES R. McDONOUGH,[1]
      Respondent.
_____/

### ORDER, REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Doc. 9).  Petitioner filed a traverse (Doc. 11).

      This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for disposition of this matter.  *See* Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The procedural background of this case is undisputed by the parties and established by the state court record.  Following a jury trial in the Circuit Court for Alachua County, Florida, Petitioner was found guilty of one count of aggravated assault with a deadly weapon and one count of driving while license suspended or revoked (Doc. 9, Ex. A at 47, Ex. B at 1-120).  On October 29, 2003,

---

[1]James R. McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

Petitioner was adjudicated guilty and sentenced to forty-eight (48) months of incarceration in state prison on the aggravated assault charge and six (6) months of incarceration in the county jail for the driving with suspended license charge, with 170 days of jail credit (Doc. 9, Ex. A at 48-54, Ex. C). Petitioner appealed his conviction and sentence to the Florida First District Court of Appeal (First DCA) (*see* Doc. 9, Exs. E, F).  The First DCA affirmed the conviction and sentence per curiam without opinion on February 18, 2005, with the mandate issuing March 8, 2005 (Doc. 9, Ex. G). O'Malley v. State, 895 So. 2d 411 (Fla. 1st DCA Feb. 18, 2005) (Table).

      Petitioner filed the instant habeas action on April 1, 2005 (Doc. 1 at 6).

## II.   STANDARD OF REVIEW

      Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

      Section 2254 now provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412-13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119-20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding.  See Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002).  First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the

---

[2]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-375, 390-399, 120 S.Ct. at 1499-1503, 1511-1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and --except as to the footnote – Scalia) in part II (529 U.S. at 403-413, 120 S.Ct. at 1518-1523).  The opinion of Justice Stevens in Part II was joined by Souter, Ginsburg, and Breyer.

relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001) (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404-06). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216. Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Id. (citing and quoting Williams, 529 U.S. at 406). A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410. The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by

a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389.  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted).  Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent.  Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence."  Section 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." (dictum)); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); see also Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations).  Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence.  See Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record")).

III.    EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it

---

[3]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
           (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. *Id.* 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365-66. Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a

---

[4]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*  With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must

---

[5]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar.  *Id.*.  A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it

---

[6]The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1301-02 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

is more likely than not that no reasonable juror would have convicted him."  <u>Schlup</u>, 513 U.S. at

327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent
> person is extremely rare.  To be credible, such a claim requires [a] petitioner to
> support his allegations of constitutional error with new reliable evidence -- whether
> it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical
> physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claim.

IV.   PETITIONER'S CLAIM

<u>Ground one:  The state court erred by denying Petitioner's motion for mistrial when
the arresting officer commented on Petitioner's post-Miranda right to remain silent.</u>

(Doc. 1 at 4).  Petitioner contends that the trial court erred in denying defense counsel's motion for

mistrial.  Defense counsel made the motion for mistrial during the testimony of the arresting officer,

Keith Carlisle, the relevant portion of which follows:

> Q [by prosecutor]:      During your contact with the defendant, did he make
> any statements to you?
>
> A [by Mr. Carlisle]:     Yes, he did.  Once we got him out of the van and I had
> the opportunity to read him his <u>Miranda</u> rights.  He did not want to speak to me
> directly, but he did make --

(Doc. 1, Ex. A).  Defense counsel objected to the testimony and, at a sidebar conference, moved for

a mistrial on the ground that Officer Carlisle improperly commented on Petitioner's right to remain

silent.  The trial court denied the motion.

Respondent contends that although Petitioner raised this claim on direct appeal of his

conviction, he did not raise it as a federal claim or cite federal law in support of his claim; therefore,

he did not exhaust his federal claim in the state courts and is now procedurally barred from doing

so (Doc. 9 at 8).  Alternatively, Respondent argues that Petitioner failed to show that the officer's

comment constituted an improper comment on Petitioner's right to remain silent, and Petitioner

failed to show that he suffered prejudice as a result of the trial court's failure to grant the motion for

mistrial (*id*. at 8-9).

Upon review of the state court record, the undersigned concludes that regardless of whether Petitioner fairly presented his federal claim to the state courts, his claim is without merit. *See* 28 U.S.C. § 2254(b)(2) (section 2254 petition may be denied on the merits notwithstanding the petitioner's failure to exhaust state court remedies).

In Doyle v. Ohio, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), the Supreme Court held that the Due Process Clause bars "the use for impeachment purposes" of a defendant's silence after he has been given Miranda warnings. 426 U.S. at 619. If the Doyle standard was violated, this court must determine whether that error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *See* Hill v. Turpin, 135 F.3d 1411, 1416 (11th Cir. 1998) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). Although repeated and intentional Doyle violations are unconstitutional, references to a defendant's silence that are "isolated" or "unintentional" or "promptly addressed by a curative instruction from the trial court" and not further "highlight[ed]" by "questioning other witnesses or during closing argument" are reviewed for harmless error. *See* Hill, 135 F.3d at 1417; Fugate v. Head, 261 F.3d 1206, 1222-23 (11th Cir. 2001). In applying the harmless error standard, the habeas court must evaluate the error in the context of the entire trial record and determine whether the error influenced the jury and whether the judgment was "substantially swayed" by the error. Hill, 135 F.3d at 1416 (citing Brecht, 507 U.S. at 642 (Stevens, J., concurring)) (internal quotations omitted).

The trial record shows that Officer Carlisle was the first witness to testify. He testified that he was on routine patrol when he heard a dispatch that a subject in an aggravated assault was in the area in a blue van (Doc. 9, Ex. B at 22). Officer Carlisle located the van, followed the vehicle until backup arrived, and then stopped the vehicle (*id*. at 22-23). He stated that he recovered a pocket knife from the floor behind the front passenger seat of the van (*id*. at 23-24). The prosecutor's direct examination continued as follows:

> Q:      During your contact with the defendant, did he make any statements to you?

> A:      Yes, he did.  Once we got him out of the van and I had the opportunity to read him his Miranda rights.  He did not want to speak to me directly, but he did make–

> MS. TALBERT [defense counsel]:    Objection, your Honor.  May we approach?

(*id*. at 25).  At sidebar, defense counsel made a motion for mistrial on the ground that Officer Carlisle commented on Petitioner's right to remain silent (*id*.).  The jury was removed from the courtroom, and the court heard argument from the parties (*id*.).  The prosecutor conceded that the testimony was an improper comment on Petitioner's silence (*id*. at 26).  The trial court requested that the prosecutor proffer the remainder of Officer Carlisle's direct testimony on this issue, and the prosecutor made the following proffer:

> Q [by the prosecutor]:    What statements did he make?
>
> A [by Officer Carlisle]:    He made spontaneous statements of, "The cowboys at the bar, they started it.  Just taking care of business.  And you're going to take me to jail, anyway."
>
> MR. BECKER [the prosecutor]:    And there were no further questions in that line, your Honor.  There were no further questions about any statements that were made.
>
> THE COURT:    Miss Talbert, you wish to ask any questions?
>
> MS. TALBERT [defense counsel]:    No, not at this time, your Honor.

(*id*. at 28).  The court then denied the motion for mistrial on the ground that Officer Carlisle's testimony was not a comment on Petitioner's silence; rather, it was a description of Petitioner's spontaneous statement (*id*. at 29).  Furthermore, the court held that the comment did not "rise to any level of prejudice." (*id*.).  The jury then re-entered the courtroom, and the direct examination of Officer Carlisle continued as follows:

> Q:    What statements did Mr. O'Malley make?
>
> A:    The spontaneous statements that he made were, "A bunch of cowboys at the bar, they started it.  Just taking care of business.  And you're going to take me to jail, anyway."
>
> MR. BECKER:    No further questions, your Honor.

(*id*.).  Defense counsel did not cross-examine Officer Carlisle regarding Petitioner's statements (*id*. at 29-31).

Rhonda Heighington, manager of the Clubhouse Grille, testified that on the night of the assault, she asked Petitioner to leave the establishment (Doc. 9, Ex. B at 36-37). Petitioner refused to do so and "became very violent," meaning, "he was screaming and cursing and telling me he did not have to leave" (*id*. at 38, 43). Ms. Heighington then asked Byron Nelson and Aaron Moffet, an employee and a former employee, to escort Petitioner out, and she asked her daughter to call 911 (*id*. at 38-39). Ms. Heighington observed Petitioner pull a knife with the blade extended as Byron Nelson approached him (*id*. at 39-40). She stated that prior to Petitioner's pulling out the knife, neither she nor anyone else had threatened him (*id*. at 40-41). When Petitioner pulled out the knife, he "slashed" at Mr. Nelson's throat, and Mr. Nelson jumped back (*id*. at 41). Everyone began screaming, "He's got a knife," and no one went near Petitioner (*id*.). Petitioner then left the bar (*id*.). Ms. Heighington testified that she went outside to get Petitioner's license plate number to report to the police, and her daughter reported the number to the 911 operator (*id*.).       On cross-examination, Ms. Heighington admitted that Mr. Nelson and Mr. Moffet were young, large men (*id*. at 43).

Karen Connor testified that she was at the Clubhouse Grille on the night of the assault (*id*. at 31-32). She stated that she observed Ms. Heighington ask Petitioner to leave the establishment, and that Ms. Heighington was very calm and said, "I need to ask you to leave." (*id*. at 32-33). Petitioner objected to being asked to leave and seemed agitated (*id*. at 32). Ms. Connor testified that Mr. Nelson came out of the kitchen to assist Ms. Heighington, and Petitioner became visibly more upset with being asked to leave (*id*. at 33). Petitioner was standing behind Ms. Connor, and he pulled out a knife, turned around, and began swinging it at Mr. Nelson (*id*. at 33-34). Right before Petitioner did this, he said something like, "You think you're so tough," or "I'll show you how tough you are." (*id*. at 34). She said some people were trying to stop Petitioner from waving the knife, and others were backing up in fear (*id*.).

On cross-examination, Ms. Connor testified that Petitioner had walked up to her to say hello because they knew each other socially, and a few people walked up to them as they realized that there was a problem when Petitioner was asked to leave (*id*. at 36). She testified that Mr. Moffet, one of the men who approached Petitioner, was a large man (*id*.). Ms. Connor also admitted that she had been drinking beer that night (*id*. at 35).

Byron Nelson testified that he is a cook at the Clubhouse Grille (*id*. at 45-46).  He testified that while he was in the kitchen, he observed Ms. Heighington speaking with Petitioner at the bar (*id*. at 46).  Mr. Nelson stated that Ms. Heighington was calm, but he could tell that they were not having a friendly exchange (*id*.).  Mr. Nelson left the kitchen and observed that Petitioner was leaning at the bar, appeared to be drunk, and was ignoring Ms. Heighington (*id*. at 46-47).  Mr. Nelson testified that Petitioner became very belligerent and was yelling and swearing (*id*. at 47).  At that point, Mr. Nelson was standing at the end of the bar observing Petitioner, who was halfway down the bar approximately 10-15 feet from him (*id*.).  Mr. Nelson walked up to Petitioner and stated, "Excuse me, sir, you need to leave." (*id*. at 48).  Petitioner looked at him and responded, "Well, I don't even respect you." (*id*.).  Mr. Nelson repeated that Petitioner needed to leave (*id*.).  Petitioner then turned his back on Mr. Nelson and ignored him (*id*.).  By then, Mr. Moffet had walked to the other side of Petitioner and the two of them started talking (*id*.).  At that point, Petitioner began to turn, and Mr. Nelson heard "Tara" yell, "He's got a knife." (*id*.).  Petitioner then turned around and swung the knife at Mr. Nelson (*id*.).  Mr. Nelson made a "limbo-type maneuver" and caught himself on the floor, avoiding the knife as it went over his face (*id*.).  Mr. Nelson then grabbed a pool stick off the wall, and saw Petitioner backing out of the bar, holding the knife toward everyone (*id*. at 48-49, 53).  Mr. Nelson testified that prior to Petitioner's swinging the knife, he (Nelson) had not touched him or threatened to touch him (*id*. at 54).  Mr. Nelson also testified that he is 24 years old, 5'9" inches tall and approximately 225 pounds, and Mr. Moffet is bigger, but not muscular (*id*. at 52-53)

Petitioner testified that he is 45 years old (*id*. at 59).  He stated that he is a maintenance worker and carries tools with him, including a knife (*id*. at 59-60).  Petitioner testified that on the night in question he had eaten dinner and drank approximately two pitchers of beer (*id*. at 63).  He stated that while he was at the Clubhouse Grille, a woman asked him if he was Tim O'Malley, and when he affirmed that he was, she told him that he had to leave and could not drink there (*id*. at 64).  Petitioner was shocked and asked why he had to leave (*id*.).  The woman said something to two men at the end of the bar, and the two men got up (*id*.).  The shorter man, Byron, punched his fist into his hand, and the larger man, Aaron, pushed up his sleeves like he was ready to fight (*id*.).  Petitioner testified that Aaron was approximately his size, but was in better shape than him (*id*. at 65).

Petitioner stated he believed the men were approaching to beat him up, so he pulled out his knife, snapped it open, and brought it in front of him (*id*.).  Petitioner told them to stay back, that they were not going to beat him up, and that he did not want to fight, he just wanted to get out of there (*id*.).  Petitioner testified that he believed a beating was imminent (*id*. at 66).  He then backed to the door, turned around, and left the bar (*id*.).  On cross-examination, Petitioner testified that when he pulled the knife, he did not see anyone carrying a pool stick (*id*. at 71).

The prosecutor called Tara Blair on rebuttal.  She testified that she did not see Mr. Nelson or Mr. Moffet pound his fist into his hand or roll up his sleeves (*id*. at 75).

Based upon the record, this court concludes that any <u>Doyle</u> violation was harmless.  Officer Carlisle's single reference to Petitioner's desire to remain silent was brief and isolated, and defense counsel immediately objected.  When Officer Carlisle's testimony resumed, he did not repeat the reference. Likewise, the prosecutor did not repeat the reference, nor did he question other witnesses or Petitioner regarding it, or address Officer Carlisle's reference during closing argument.  Furthermore, the State presented a strong case against Petitioner, including testimony from the victim and eyewitnesses that Petitioner pulled a knife and swung it at Byron Nelson in the absence of circumstances that required him to defend himself.  In light of the circumstances surrounding Officer Carlisle's reference and the evidence adduced at trial, this court concludes that Officer Carlisle's comment did not have a substantial and injurious effect or influence on the jury, and the verdict was not substantially swayed by the <u>Doyle</u> error.  Therefore, Petitioner is not entitled to federal habeas relief.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that James R. McDonough is substituted for James Crosby as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this <u>25th</u> day of October 2006.


<u>/s/ *Elizabeth M. Timothy*</u>
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**



<u>**NOTICE TO THE PARTIES**</u>

      Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).